[Civ. No. 19429.   Second Dist., Div. One.   July 8, 1953.]

FRANK S. RHODES, Respondent, v. JOSEPH AMOR, Appellant.

Hunter & Liljestrom and Wendell Mackay for Appellant.

Joseph Shane and Frank Alof for Respondent.

DRAPEAU, J.—On September 6, 1950, defendant Amor was the owner and operator of a restaurant in the city of Los Angeles. Plaintiff was a paving contractor. On that day plaintiff was preparing to pave and surface a driveway and certain portions of defendant's property to the rear of the restaurant. A wooden post obstructed the driveway. From this wooden post electric wires were strung to other posts on a vacant lot adjoining defendant's lot on the south. Light bulbs hung from the wires. Previously defendant had used this vacant lot, which was paved, for customer parking.

Immediately south of the paved lot was a brick building, to the side of which an electric meter and switch box were affixed. Electric wires ran up the side of the building; thence to a metal post on the vacant lot; and from there to the wooden post on defendant's driveway.

Defendant wanted the wooden post removed. Plaintiff testified that "Mr. Amor asked if that post could be removed because it was obstructing his driveway, and I said, 'Yes, it could be removed.' . . . And I noticed the wires leading from the posts and I said, 'What about those wires?' I said, 'We can remove the post but are not electricians and can't handle the matter of the wires.' . . . He said . . . 'I know about the wires. They have been dead for years.' . . . Then I told him that I didn't want to fool with them because they were electric wires . . . He told me, 'Don't worry about them, they are dead.' And he said, 'You can take a look if you will, that they are turned off.' Now on the back of the lot there was a box, a switch box of some description. We started back to it . . . I stopped when we had gone about 10 feet and said, 'I would not know by looking at it whether it is turned off or on. I will have to take your word for it.' Again he said, 'Well, they are dead all right, you can depend on that.' . . . Then we went back 10 feet or so where we had been, and I said, 'Well, where do you want them cut?' " Mr. Amor indicated where he thought was a good place to cut them and again told plaintiff, "I have been here for quite a long time. I know that they are not live wires. Don't be worried about it."

Defendant testified that when plaintiff asked him whether the wires were dead or alive, he replied, "According to my opinion the wires shall be dead." The witness did not recall the conversations testified to by plaintiff.

Mr. Beltrand, an employee of plaintiff, who was assisting

with the paving job, testified that he was present when the two men were discussing the removal of the wooden post. He stated that "they talked about getting the post out"; that plaintiff said, "What about the wires that are up there?" That defendant "told him to go ahead and cut them they didn't have any electricity to them and that they would have been dead. That is what Joe (defendant) said. And I told Frank (plaintiff) not to do it. I told him 'Gee, I wouldn't do it if I was you,' and he said 'Why not? Joe says here that they are dead,' and I just told him 'Crap.'

"You know Joe started saying, I heard him say a couple of times that they were dead, he was sure about it, the wires were dead, and so they sent me to get the pliers."

Plaintiff procured a ladder which was either leaning against the building or was in a truck near by, and with a pair of tin snips furnished by defendant, he climbed up the ladder and proceeded to cut the wires. While doing so, he received a severe electrical shock. As a result, he was thrown to the ground and sustained personal injuries.

By this action, plaintiff sought damages on account of these injuries. From a judgment in his favor of the sum of $7,000, defendant appeals.

Appellant urges that there is no substantial evidence to support the trial court's finding that respondent was not guilty of contributory negligence.

In support of this stand, appellant argues that respondent, a college graduate, testified that he knew as much about electricity as the average man. But that, notwithstanding such knowledge, he neglected to inspect the switch, failed to heed the warning of his employee, and without regard for his own safety proceeded to cut the wires using a metal ladder and an uninsulated pair of snips.

This argument would undoubtedly be persuasive were it not for the fact that respondent was expressly and repeatedly assured by appellant that the wires were dead and that the electric current had been turned off.

"The effect of the assurance of safety was merely to relieve the plaintiff . . . from the claim of negligence in failing to ascertain for himself the condition of the ladder which, in the absence of an assurance which falsely lulled him into a sense of security, he, as an ordinarily prudent person, would have been under a duty to ascertain." *Perry* v. *D. J. & T. Sullivan, Inc.*, 219 Cal. 384, 393 [26 P.2d 485].

Appellant also contends that respondent was guilty of contributory negligence as a matter of law, in that he contacted the live wires after being warned to leave them alone.

The so-called warning came from respondent's employee. So far as the record discloses, this man had no knowledge that the wires were alive. He merely said to respondent, "Gee, I wouldn't do it if I was you." Respondent's response clearly shows that he was relying on appellant's assurance to him that the wires were dead.

As stated in *Freeman* v. *Nickerson*, 77 Cal.App.2d 40, 49 [174 P.2d 688], quoting from *Flores* v. *Fitzgerald*, 204 Cal. 374, 376 [268 P. 369] : " ' " "Contributory negligence is a question of law only when the court is impelled to say that from the facts reasonable men can draw but one inference and that an inference pointing unerringly to the negligence of the plaintiff contributing to his injury." (*Reaugh* v. *Cudahy Packing Co.*, 189 Cal. 335, 336 [208 P. 125, 128] ; *Smith* v. *Southern Pac. Co.*, 201 Cal. 57 [255 P. 500].) In all other cases the question of contributory negligence is a question of fact for the jury (*Wahlgren* v. *Market St. Ry. Co.*, 132 Cal. 656, 663 [62 P. 308, 64 P. 993] ; *Jansson* v. *National Steamship Co.*, 189 Cal. 187 [208 P. 90] ; *Smith* v. *Southern Pac. Co., supra*).' "

And in *Flach* v. *Fikes*, 204 Cal. 329, 332 [267 P. 1079], the court said : "Contributory negligence is an affirmative defense and it must be pleaded and proved by the defendant. Unless the evidence on the part of the plaintiff shows that the injured party was guilty of contributory negligence the defendant must show by a preponderance of the evidence that said injured party was guilty of such negligence. . . . This question is one for the determination of the jury or the trial court and their finding thereon is binding upon an appellate court (*Scott* v. *San Bernardino Valley etc. Co.*, 152 Cal. 604 [93 P. 677] ; *Clark* v. *Bennett*, 123 Cal. 275, 277 [55 P. 908] ; *Schneider* v. *Market Street Ry. Co.*, 134 Cal. 482, 488 [66 P. 734])."

Under the evidence presented, both negligence and contributory negligence were issues of fact for the determination of the trial court. That determination is binding on this court.

The judgment is affirmed.

White, P. J., and Doran, J., concurred.